# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3228 | **DATE** | 2/5/2004 |
| **CASE TITLE** | Fireman's Fund Insurance Company vs. Werner Enterprises, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion of Wayne County defendants' motion to dismiss Counts III and IV of plaintiff's first amended complaint [21-1] is granted. Motion of Wayne County defendants to dismiss Bunch Transport, Inc.'s cross-claim [27-1] is granted. The Wayne County defendants are dismissed from this action. Status hearing is set for 3/1/04 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | FEB 0 6 2004 | |
| | Notified counsel by telephone. | | date docketed | 34 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 2/5/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | ) | |
|---|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, a/s/o VERIZON WIRELESS COMMUNICATIONS INCORPORATED, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | No. 03 C 3228<br>Judge Joan H. Lefkow |
| WERNER ENTERPRISES INC., a Nebraska Corporation; BUNCH TRANSPORT INC. a South Carolina Corporation; the SHERIFF of WAYNE COUNTY, Illinois; EVERETT McCULLEY, a Wayne County Sheriff's Deputy; J.B. FLETCHER, the Wayne County Sheriff's Chief Deputy, | ) ) ) ) ) ) ) ) | DOCKETED<br><br>FEB 0 6 2004 |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

On August 12, 2003, plaintiff, Fireman's Fund Insurance Company, a/s/o Verizon Wireless Communications Incorporated,[1] filed a four count First Amended Complaint against defendants, Werner Enterprises Inc., a Nebraska Corporation ("Werner"); Bunch Transport, Inc., a South Carolina Corporation ("Bunch"); Sheriff of Wayne County, Illinois; Everett McCulley ("McCulley"), a Wayne County Sheriff's Deputy; and J.B. Fletcher ("Fletcher"), the Wayne County Sheriff's Chief Deputy.[2] Counts I and II are claims under the Carmack Amendment, 49

---

[1] Verizon is the subrogor of Fireman's Fund Insurance Company. The court will refer to them individually as "Fireman's Fund" and "Verizon" and together as "plaintiff."

[2] Hereinafter the Sheriff of Wayne County, McCulley and Fletcher will be referred to collectively as the "Wayne Count defendants."

U.S.C. § 14706, against both Werner and Bunch. Counts III and IV are state law claims against the Wayne County defendants for "violation of statutory procedures regarding recovered property" and violation of the Law Enforcement Disposition of Property Act, 765 ILCS 10/30-2 *et seq.* This court has original jurisdiction pursuant to 28 U.S.C. § 1331 over the claims against Werner and Bunch based on the Carmack Amendment and supplemental jurisdiction over the claims against the Wayne County defendants pursuant to 28 U.S.C. § 1367.

On October 17, 2003, Bunch filed a cross-claim against the Wayne County defendants seeking "indemnification, contribution or apportionment of liability." Currently pending before the court are two motions: (1) the Wayne County defendants' motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts III and IV of plaintiff's First Amended Complaint and (2) the Wayne County defendants' motion under Rule 12(b)(6) to dismiss Bunch's cross-claim. For the reasons set forth below, both motions are granted.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

## ALLEGATIONS OF THE COMPLAINT

According to the First Amended Complaint, which is taken as true for purposes of this motion, on or about September 20, 2002, Werner and/or Bunch, through their employees or agents, accepted a shipment of 37,000 V720C model wireless telephones (the "subject shipment") from Motorola in Harvard, Illinois for the account of Verizon and/or Verizon's customer, Radio Shack, located in North Charleston, South Carolina. (First Am. Compl. ¶ 4.) Werner and Bunch received the subject shipment in good order, quantity and condition. (First Am. Compl. ¶ 5.) The subject shipment had a value of approximately $630,000.00. (First Am. Compl. ¶ 12.)

The driver of the trailer unit which received the shipment from Motorola was Thomas Futch ("Futch"), who was authorized to accept the subject shipment on behalf of Werner and/or Bunch. (First Am. Compl. ¶¶ 7-8.) Shortly after Futch accepted the subject shipment, it was stolen from a truck stop in Rochelle, Illinois while in Futch's care, custody and control. (First Am. Compl. ¶ 11.) Thereafter, on September 24, 2002, McCulley and Fletcher recovered the subject shipment with only one cellular phone missing. (First Am. Compl. ¶13.) McCulley and Fletcher took care, custody and control of the subject shipment and were aware that it contained cellular phones. (First Am. Compl. ¶ 15.) McCulley and Fletcher then drove the trailer containing the subject shipment to an unfenced and unsecured lot adjacent to a gas station and secured the trailer doors with a padlock. (First Am. Compl. ¶ 16.) In addition, they also removed the key from the ignition. (*Id.*) They later contacted Verizon employees and advised them that the lot was well-lit and/or open 24 hours. (First Am. Compl. ¶ 17.)

3

At some point between when McCulley and Fletcher assumed care, custody and control of the subject shipment on September 24, 2002 and the early morning hours of September 25, 2002, the shipment disappeared from the trailer. (First Am. Compl. ¶ 20.) Plaintiff alleges that McCulley and Fletcher's actions were either negligent or reckless and either resulted from an actual and deliberate intention to cause plaintiff's subrogor harm or showed an utter indifference to or conscious disregard for the safety of plaintiff's subrogor. (First Am. Compl. ¶ 24.) As a result of the disappearance of the subject shipment, Fireman's Fund made a payment to Verizon under an insurance policy between the two parties for $605,000.00. (First Am. Compl. ¶ 28.) Verizon had a $25,000 deductible under the policy which constitutes the damages it sustained as a result of the disappearance. (First Am. Compl. ¶ 29.)

## DISCUSSION

### A. Motion to Dismiss Plaintiff's Claims Against the Wayne County Defendants

The Wayne County defendants move to dismiss the Count III and IV claims brought against them. Count III alleges violation of "statutory procedures regarding recovered property," while Count IV alleges a statutory violation of the Law Enforcement Disposition of Property Act, 765 ILCS 10/30-2.[3] The Wayne County defendants believe the claims should be dismissed because they are afforded immunity from liability by Sections 4-102 and 2-201 of the Illinois

---

[3]765 ILCS 10/30-2 provides

Property believed to be abandoned, etc., inquiry and notice to owner; return of property

(a) Such property believed to be abandoned, lost or stolen or otherwise illegally possessed shall be retained in custody by the sheriff, chief of police or other principal official of the law enforcement agency, which shall make reasonable inquiry and efforts to identify and notify the owner or other person entitled to possession thereof, and shall return the property after such person provides reasonable and satisfactory proof of his ownership or right to possession and reimburses the agency for all reasonable expenses of such custody.

Tort Immunity Act, 745 ILCS 10/1-101 *et seq.* (the "Act"). Section 4-102 of the Act provides,

> Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection service, failure to prevent commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals.

745 ILCS 10/4-102. Section 2-201 of the Act provides,

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of discretion even though abused.

745 ILCS 10/2-201.

Starting with the argument under Section 4-102, this statutory section was meant to codify the "public duty role" under which "a municipality could not be held liable for failure to provide adequate government services, such as police and fire protection." *Hernandez v. Kirksey*, 306 Ill. App. 3d 912, 915, 715 N.E. 2d 669, 672 (1999). It "rests upon policy considerations that a police department's negligence, oversights, blunders or omissions are not the proximate or legal cause of harms committed by others." *Id.*, 715 N.E. 2d at 672 (quoting *Schaffrath v. Village of Buffalo Grove*, 160 Ill. App. 3d 999, 1003, 513 N.E. 2d 1026, 1028 (1987)). Courts have applied the provisions of Section 4-102 broadly. *See, e.g., McLellan v. City of Chicago Heights*, 61 F.3d 577, 578 (7th Cir. 1995) (immunity applies where police and firefighters performed crowd control services at a fireworks display because such activities were "police services"); *Medina v. City of Chicago*, No. 01 C 9490, 2002 WL 31027965, at *6 (N.D. Ill. Sept. 10, 2002) (concluding that immunity applies because officers performed police services when they failed to transport intoxicated bystander to hospital); *Estes v. Chicago Bd. of Educ.*,

5

No. 98 C 2197, 1998 WL 516107, at *1 (N.D Ill. Aug. 13, 1998) (applying immunity to Chicago Board of Education's failure to detect or prevent a crime); *Hernandez*, 306 Ill. App. 3d at 917, 715 N.E. 3d at 673 (applying immunity to crossing guard because such services were police protection services). This immunity applies even when a special duty is undertaken. *See Zimmerman* v. *Village of Skokie*, 183 Ill. 2d 30, 47, 697 N.E. 2d 699, 709 (1998) ("Because the special duty doctrine is a judicially created exception to the public duty rule, the special duty doctrine cannot, and was not, intended to contravene the immunities provided to governmental entities under the Tort Immunity Act.").

There can be little doubt that under the allegations in the First Amended Complaint the Wayne County defendants were performing police protection services, as it is alleged that they recovered the subject shipment after it had been stolen, took care, custody and control over it, moved it from its location to an unfenced and unsecured lot, and thereafter contacted Verizon employees and informed them that the subject shipment was in a well-lit lot open 24 hours. (First Am. Compl. ¶¶ 13-18.) Plaintiff implicitly concedes that its complaint with the Wayne County defendants pertains to the performance of police activities when it states in response that "[p]rotecting the goods from further harm required a simply ministerial act of securing them from thieves . . . ." Essentially, plaintiffs complain that the decision made by the Wayne County defendants was inadequate police services because the subject shipment should not have been left at the unfenced and unsecured lot. This clearly falls within Section 4-102's language immunizing public entities and their employees for failing to provide adequate police protection services or

failing to prevent the commission of crimes.[4]

It is not entirely clear whether under Illinois law willful and wanton conduct is immunized under Section 4-102. A strict reading of recent Illinois Supreme Court opinions would suggest that the answer is yes. On numerous occasions the Court, when interpreting other provisions of the Act, has remarked that if an immunity provision does not contain an exception for willful and wanton misconduct, such misconduct is immunized. *See, e.g., Village of Bloomingdale v. CDG Enters.*, 196 Ill. 2d 484, 491-94, 752 N.E. 2d 1090, 1096-99 (2001); *Harinek v. 161 North Clark Street P'Ship, Ltd.*, 181 Ill. 2d 335, 347, 692 N.E. 2d 1177, 1184 (1998); *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 196, 680 N.E.2d 265, 273 (1997); *Barnett v. Zion Park Dist.*, 171 Ill. 2d 378, 391, 665 N.E. 2d 808, 814-15 (1996). As the court stated in *In re Chicago Flood Litig.*,

> The plain language of section 2-201 is unambiguous. That provision does not contain an immunity exception for willful and wanton misconduct. Where the legislature has chosen to limit an immunity to cover only negligence, it has unambiguously done so. Since the legislature omitted such a limitation from the

---

[4]Bunch, in defense of its cross-claim, attempts to evade the Tort Immunity Act by holding the Wayne County defendants liable under an implied bailment theory. While plaintiff does not make this argument, and the court does not need to address the view in part B below to dispose of Bunch's cross-claim, it nevertheless is helpful to explain why such a theory would fail. In *American Ambassador Cas. Co. v. City of Chicago*, 205 Ill. App. 3d 879, 563 N.E. 2d 882 (1990), the court held that the City could be liable, and thus was not immune under the Tort Immunity Act, for an individual's car which had been stolen after being towed and stored in the City's lot. 205 Ill. App. 3d at 883-84, 563 N.E. 2d 885-86. The court ruled that the Tort Immunity Act was not implicated because a "constructive bailment" or a "bailment implied in law" had been formed in which "the complaint was premised upon bailment, a contractual relationship . . .," and that the Tort Immunity Act could not affect the liability of a municipality in contract. *Id.*, 563 N.E. 2d at 885. Such line of reasoning, however, at least insofar as it allows quasi- or implied contracts to avoid the Tort Immunity Act, was rejected by the Illinois Supreme Court in *Village of Bloomingdale v. CDG Enters.*, 196 Ill. 2d 484, 752 N.E. 2d 1090 (2001). In that case the Illinois Supreme Court reversed a decision by an appellate court that a "quasi-contract" was a contract for purposes of § 2-101(a) of the Tort Immunity Act, which provides that the Act does not affect the liability of a municipality based on contract. The court noted that such "quasi" or "implied" theories are in fact "no contract at all but instead a remedy based upon the principle of unjust enrichment . . . ." *Id.* at 500-01, 752 N.E. 2d at 1102. The court therefore found that the appellate court erred in its conclusion that quasi-contracts fell within § 2-101(a) of the Tort Immunity Act and instead held that the quasi-contract theories in that case were barred by other portions of the Tort Immunity Act. *Id.*, 751 N.E. 2d at 1102.

7

> plain language of section 2-201, then the legislature must have intended to immunize liability from both negligence and willful and wanton misconduct. Cases holding to the contrary are overruled on this point.

176 Ill. 2d at 196, 680 N.E. 2d at 274. *See also, Regalado v. City of Chicago*, 40 F. Supp. 2d 1009, 1016-17 (N.D. Ill. 1999); *Barnes v. Chicago Housing Auth.*, 326 Ill. App. 3d 710, 720, 761 N.E. 2d 283, 290-91 (2002).

Although plaintiff fails to present an effective response to these cases, or for that matter any argument at all on the issue of willful and wanton conduct, it does manage to point to Section 2-202 of the Act, which provides that "a public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." At least one Illinois Supreme Court case, relying on the exception to immunity contained in Section 2-202, has allowed an action for willful and wanton conduct to go forward despite Section 4-102. In *Doe v. Calumet City*, 161 Ill. 2d 374, 389, 641 N.E. 2d 498, 505 (1994), the court stated that "plaintiffs can escape the statutory immunities granted municipalities and their employees ... by proving willful and wanton conduct alone." While perhaps one would have expected courts to treat *Doe* as overruled, or at least lacking vitality after the above cited Illinois Supreme Court cases, *see Regalado*, 40 F. Supp. 2d at 1017 ("In short, *Doe* ... and other cases ... that read a willful and wanton conduct exception into Act § 4-102 are no longer good law."), some of the appellate courts have continued to treat *Doe* as good law. *E.g., Ozik v. Gramins*, ___ Ill. App. 3d ___, 799 N.E. 2d 871, 880-82 (2003); *Cadena v. Chicago Fireworks Mfg., Co.*, 297 Ill. App. 3d 945, 955, 697 N.E. 2d 802, 810 (1998); *Fatigato v. Village of Olympia Fields*, 281 Ill. App. 3d 347, 355-56, 666 N.E. 2d 732, 738-39 (1996). These courts state that an action based on willful and wanton misconduct is not barred by Section 4-102 and

may be advanced in light of Section 2-202. For example, in *Ozik*, the court ruled that Section 2-202 was an "exception to the immunities provided to police officers by the Act . . ." and that the Illinois Supreme Court opinions cited above did not overrule *Doe*.[5] 799 N.E. 2d at 883-84. One court has attempted to explain away any apparent inconsistencies in these lines of cases by noting that Section 4-102, in light of Section 2-202, would not bar "claims premised upon a public entity's willful and wanton misconduct in the actual execution and enforcement of the law . . ." but that Section 4-102 would provide immunity for willful and wanton misconduct "where a public entity fails to provide any or adequate police services." *A.R. v. Chicago Bd. of Educ.*, 311 Ill. App. 3d 29, 35, 724 N.E. 2d 6, 12 (1999).

In any event, this court need not delve deeper into the issue here because, even assuming that actions for willful and wanton misconduct are not immunized by Section 4-102, plaintiff's allegations in this case fall well short of establishing willful and wanton misconduct under Illinois law. The Act defines willful and wanton misconduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Willful and wanton conduct "consists of more than mere inadvertence, incompetence, or unskillfulness." *Geimer v. Chicago Park Dist.*, 272 Ill. App. 3d 629, 637, 650 N.E. 2d 585, 592 (1995).

Plaintiffs allegations in its First Amended Complaint are that the Wayne County defendants secured the trailer, drove it to a lot which, although unfenced and unsecured, was

---

[5]As far as this court can tell based on its access to Westlaw, the Illinois Supreme Court on January 28, 2004 declined to hear any appeal from the *Ozik* case.

well-lit, secured the trailer doors with a padlock and removed the ignition key. (Compl. ¶¶ 16-18.) Taking these facts as true, which the court must do on this motion to dismiss, they do not rise to the level of willful and wanton misconduct as a matter of law. *E.g., Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) ("If the plaintiff chooses to provide additional facts, beyond the short and plain statement requirement, the plaintiff cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff is not entitled to relief."); *Jefferson v. Ambroz*, 90 F.3d 1291, 1296 (7th Cir. 1996) ("[I]f a plaintiff chooses to plead particulars, and they show he has no claim, then he is out of luck–he has pleaded himself out of court."). While plaintiff may complain that these actions taken by the Wayne County defendants were inadequate, they did not constitute willful and wanton conduct. The actions here, at best, sound in negligence and not willful and wanton behavior. *See, e.g., Moran v. City of Chicago*, 286 Ill. App. 3d 746, 756, 676 N.E. 2d 1316, 1323 (1997) (no willful and wanton conduct as a matter of law because police officers had not abandoned or left plaintiff unprotected); *Geimer*, 272 Ill. App. 3d at 638, 650 N.E. 2d at 593 (no willful or wanton conduct because defendants only made "incompetent discretionary decisions"); *Siegmann v. Buffington*, 237 Ill. App. 3d 832, 834, 604 N.E. 2d 1038, 1040 (1992) (no willful and wanton conduct when defendant took reasonable but careless and inadequate measures).

In addition to the failure to plead facts that amount to willful and wanton conduct, plaintiff seems to miss the point in devoting nearly all of its argument to whether the actions performed by the Wayne County defendants were either ministerial or "policy-making." This would have been relevant to an immunity analysis under Section 2-201 of the Act, but we know from *In re Chicago Flood Litig.* and the other cited cases that Section 2-201 immunizes willful

10

and wanton conduct. The argument bears no relevance to Section 4-102. Moreover, it adds nothing to the analysis of whether the Wayne County defendants' actions could be viewed as willful and wanton. Finally, addressing plaintiff's claim under the Law Enforcement Disposition of Property Act, nothing in that Act contradicts the immunity provided in Section 4-102 nor does the Act provide that police are liable for loss of property caused by the actions of a third party. Plaintiff does not provide any argument otherwise, so the Law Enforcement Disposition of Property Act does not change the analysis in this case.

Accordingly, the Wayne County defendants' motion to dismiss Counts III and IV is granted.

### B. Motion to Dismiss Bunch's Cross-claim Against the Wayne County Defendants.

Bunch brings its cross-claim against the Wayne County defendants seeking "indemnification, contribution or apportionment of liability." The Wayne County defendants seek dismissal of the cross-claim on grounds that they (1) are immune under the Tort Immunity Act and therefore cannot be liable in contribution and (2) are immune from suit for any implied indemnity under the Tort Immunity Act. Bunch, in response, states that it may bring a contribution action against the Wayne County defendants under either federal common law or Illinois law.

Starting with Bunch's claim for contribution under Illinois law, it fails based on binding precedent. The Seventh Circuit has expressly held that a defendant sued under the Carmack Amendment cannot bring an action for contribution under Illinois law. *North Am. Van Lines, Inc. v. Pinkerton Sec. Systems, Inc.*, 89 F.3d 452, 458-59 (7th Cir. 1996). The reason for this is

11

clear. Under Illinois law, the Contribution Act[6] requires potential liability sounding in tort, not contract. *See id.* at 457 ("[I]f either party's liability to the injured party is premised solely on a contract theory, there can be no contribution action as contemplated by the Contribution Act."). The Carmack Amendment, however, is contractual in nature in that the liability scheme of the Amendment is incorporated into a bill of lading (*i.e.*, a contract) as a matter of federal law and federal law preempts a shipper's state law remedies, including those sounding in tort. *Id.* at 457-58. Thus, because under the Carmack Amendment there is no tort liability of a carrier to a shipper for which it could be a joint tortfeasor for purposes of the Contribution Act, such contribution claims must fail.[7]

Applying *North Am. Van Lines* to the facts of this case, plaintiff sues both Bunch and Werner based on the Carmack Amendment. This remedy being based on federal law and preempting all state law remedies, neither Bunch nor Werner is liable in tort. Since there is no tort liability, no contribution action can be brought against a third party, in this case the Wayne County defendants. Accordingly, Bunch's cross-claim for contribution against the Wayne County defendants must fail.[8]

---

[6]The Contribution Act provides that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property . . . there is a right to contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a).

[7]The court did state that it did not venture an opinion as to "what circumstances might result in a carrier being liable under a negligence theory for a breach of a duty implied either by the Carmack Amendment or by the terms of a contract." 89 F.3d at 458. Bunch makes no argument on this ground, nor does the record support Bunch being liable to plaintiff under any negligence theory implied under the Carmack Amendment. Also, the court did note that carriers may still be liable to shippers in tort for incidental harms associated with the loss or damage of cargo. *Id.* No separate tort action for incidental harms has been brought against Bunch in this case.

[8]Even if Bunch's contribution claim could survive under the Carmack Amendment, it would also fail for all the reasons stated in part A of this opinion. As noted there, the Wayne County Defendants are immune from liability under Section 4-102 of the Tort Immunity Act. *See Martin v. Lion Uniform Co.*, 180 Ill. App. 3d 955, 960, 536 N.E.
(continued...)

Bunch's next argument is that it may maintain a contribution action under federal common law. Some courts have allowed such an action in certain scenarios. *See, e.g., Mooney Ltd. v. Farrell Lines, Inc.*, 616 F.2d 619, 625 (2d Cir. 1980); *Byrton Dairy Prods. v. Harborside Refrigerated Servs., Inc.*, 991 F. Supp. 977, 985 (N.D. Ill. 1997); *Hartog Trading Corp. v. M/V Presidente Ibanez*, No. 90-2713, 1991 WL 33605 (E.D. La. Mar. 6, 1991). Nevertheless, in light of *North Am. Van Lines*, and based on the facts presented in this case, the court does not believe a contribution action based on federal common law seeking joint tort liability should be treated differently from one brought under state law.

First, Bunch does not argue or otherwise do anything to suggest that its federal common law contribution claim is based on anything other than joint tort liability. Certainly there can be no joint contractual liability, as the Wayne County defendants were not part of any bill of lading between Verizon and Werner or Bunch. Moreover, the Wayne County defendants had no separate bill of lading or contractual liability to anyone in this case.

Second, the cases supporting a federal common law contribution action are distinguishable from this case. Bunch cites *Byrton Dairy Prods.* in support of its argument that it may bring a contribution action under federal common law. That case provided little analysis as to why a federal common law contribution action was available and instead relied on, among other cases, the Second Circuit's opinion in *Mooney*. A reading of *Mooney* illustrates that the court there found that a contribution action was appropriate because "there is a clear trend in the law toward a rule allowing contribution among joint tortfeasors . . . ." 616 F.2d at 625. As noted

---

⁸(...continued)
2d 736, 739 (1989) (noting that municipality could not be "liable in tort" for purposes of the Contribution Act because of the Tort Immunity Act).

13

above, however, based on binding precedent, there are no joint tortfeasors in this case. Bunch's liability to plaintiff is contractual in nature under the Carmack Amendment. Moreover, the actions in *Mooney*, *Byrton* and *Hartog* beared little resemblance to the action here. In *Mooney* and *Hartog*, the contribution action was between a maritime shipper and an inland carrier. The courts in both cases explicitly noted this in allowing contribution. *See Mooney*, 616 F.2d at 635 ("we hold that contribution is available here in this situation of joint liability shared by a maritime shipper and an inland trucker."); *Hartog*, 1991 WL 33605, at *4 (noting that "situation of the joint liability shared by a maritime shipper and an inland trucker" addressed in *Mooney* was "precisely the case at bar."). This is in no way comparable to this case, as the Wayne County defendants were never contracted shippers of the merchandise.

Last, and most fundamentally, Bunch does nothing to take this case out from under the ambit of *North Am. Van Lines*. The court made clear that potential liability under the Carmack Amendment is contractual in nature. Thus, the Wayne County defendants are not joint tortfeasors from which Bunch can seek contribution. Bunch's contribution claim fails for this reason, even if it purports to be under federal common law.

Finally, Bunch appears to have abandoned its indemnification claim, as its presents no argument on this issue in its response. In any event, because no contract existed between Bunch and the Wayne County defendants, the claim could only have been under a theory of implied indemnity. Under Illinois law, implied indemnity is based on quasi-contract. *See Kerschner v. Weiss & Co.*, 282 Ill. App. 3d 497, 505, 667 N.E. 2d 1351, 1357 (1996). As noted above in footnote 4, public entities are entitled to the protection of the Tort Immunity Act in such quasi-contract claims. *See Village of Bloomingdale*, 196 Ill. 2d at 500-01, 752 N.E. 2d at 1102.

Accordingly, for the above stated reasons, the Wayne County defendants' motion to dismiss Bunch's cross-claim for "indemnification, contribution or apportionment of liability" is granted.

## CONCLUSION

The Wayne County defendants' motion to dismiss Counts III and IV of plaintiff's First Amended Complaint is granted [#21]. In addition, the Wayne County defendants' motion to dismiss Bunch's cross-claim is also granted [#27]. The Wayne County defendants are dismissed from this action. This case will be called for status on March 1, 2004 at 9:30 a.m.

Enter: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 5, 2004